# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

              v.

MANUEL FLORES-MONTANO,
                    *Defendant-Appellant.*

No. 04-50497

D.C. No.
CR-02-00536-IEG

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding

Argued and Submitted
June 10, 2005—Pasadena, California

Filed September 14, 2005

Before: Betty B. Fletcher, Pamela Ann Rymer, and
Raymond C. Fisher, Circuit Judges.

Per Curiam Opinion

13241

**COUNSEL**

Benjamin L. Coleman, Esquire, San Diego California, for the appellant.

Mark R. Rehe, Assistant United States Attorney, San Diego, California, for the appellee.

**OPINION**

PER CURIAM:

Appellant Manuel Flores-Montano appeals from the denial of his motion to suppress evidence and the resulting conditional-plea conviction for "illegal importation of merchandise" after border inspectors found thirty-seven kilograms of marijuana in the gas tank of his vehicle during a search of Flores-Montano's vehicle as he was at the border attempting to enter the country. Flores-Montano contends that inspectors unlawfully searched his gas tank in violation of 19 U.S.C. § 482, which he contends requires some "subjective" or "good faith" suspicion prior to conducting a search. We hold that 19 U.S.C. § 1581(a), not § 482, authorizes and governs vehicle searches at the border. Because § 1581(a) contains no suspicion requirement, we affirm the conviction.

I.

On February 12, 2002, appellant Manuel Flores-Montano drove a Ford Taurus station wagon to the United States border at the Otay Mesa Port of Entry in Southern California. The border inspector noticed that Flores-Montano avoided eye contact during routine questioning, and that his hand was shaking when he produced identification. The inspector then tapped on the vehicle's gas tank and noted that it sounded solid. A narcotics-sniffing canine was then summoned, and the dog alerted on the vehicle.[1] At that point, Flores-Montano was escorted to the security office and his vehicle was taken to secondary inspection.

---

[1] Just as in the original proceedings, the government does not rely on these facts — the observed nervousness, the solid sound of the gas tank, and the canine sniff — that tend to support a reasonable suspicion to believe that Flores-Montano was involved in criminal activity. Rather, the government contends that *no* suspicion is needed to remove a gas tank, even if it causes minor damage to the tank such as small dents, scratches, and removal of the adhesive "bondo."

Within twenty to thirty minutes, a mechanic arrived and removed the gas tank. The car was raised in the air on a lift, and the mechanic loosened bolts and straps on the undercarriage of the car and removed some hoses and electrical connections so that the gas tank could then be lowered. This procedure took approximately ten to fifteen minutes. Once the tank had been removed, the inspector hammered off some adhesive "bondo" that had been applied over an access plate. The access plate was then removed, and thirty-seven kilograms of marijuana were found wrapped in cellophane and tape. The removal of the adhesive "bondo" and access plate took another ten to fifteen minutes. None of the procedures caused any significant damage to the gas tank or vehicle; the government concedes that the tank might have been scratched or slightly dented, but asserts that all vehicle components could have been replaced without any perceptible damage.

Flores-Montano was originally charged with narcotics importation. When the government expressly declined to rely on the dog sniff and other facts to justify its search, Flores-Montano moved to suppress the evidence as having been seized during a search unsupported by reasonable suspicion in violation of the Fourth Amendment. The district court granted the motion and suppressed the evidence. On appeal we affirmed the suppression. The Supreme Court reversed, holding that no suspicion was required to perform a gas tank search at the border. *United States v. Flores-Montano*, 541 U.S. 149 (2004).

On remand to the district court, Flores-Montano again moved to suppress, arguing that the search was one involving "destructive force," which must be supported by a reasonable suspicion of unlawful activity. The district court denied the motion, and Flores-Montano again entered a conditional guilty plea and appealed the denial of the suppression motion. In the present appeal, Flores-Montano abandons his Constitutional "destructive force" argument, and advances for the first time that 19 U.S.C. § 482 requires that border inspectors have

some "subjective" or "good faith" suspicion of wrongdoing in order to carry out a search that is at least minimally damaging. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## II.

**[1]** As an initial matter, the government argues that Flores-Montano's statutory claim for relief has been waived, as it was never raised before the district court. While issues not raised to the district court normally are deemed waived, we have recognized three narrow exceptions to this general rule. *United States v. Robertson*, 52 F.3d 789, 791 (9th Cir. 1994). Specifically, we may review newly presented issues:

> [I]f (1) there are "exceptional circumstances" why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court. Further exception may be made when plain error has occurred and an injustice might otherwise result.

*Id.* (quoting *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991) (internal quotations omitted)).

**[2]** This case falls squarely within the third exception. We conclude that the "the issue presented is purely one of law and the [government] will suffer no prejudice as a result of the failure to raise the issue in the trial court."[2] *Id.* (internal quota-

---

[2]Appellant argues that his newly-presented statutory basis for arguing that the gas tank search was unlawful constitutes a new *argument*, not a new *claim*, and that arguments are not deemed waived. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (holding that a new *argument* as to why prior conviction was not an aggravated felony for

tions omitted). We therefore exercise our discretion to review Flores-Montano's assertion that there is a federal statutory requirement that border agents have some modicum of suspicion before conducting a minimally destructive search.

## III.

Flores-Montano argues that both 19 U.S.C. § 482 and 19 U.S.C. § 1581(a) govern border searches, and that § 482 requires a border inspector to have some "subjective" or "good faith" suspicion in order to conduct a destructive search, even where the damage to property is minimal.

[3] Section 482 reads in full:

**Search of vehicle and persons.**

(a) Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they *shall suspect* there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary

---

deportation purposes was not waived when argued for first time on appeal). We decline to reach this issue, and need not determine whether Flores-Montano raises a new claim or merely a new argument. We likewise do not address the government's argument that under Federal Rule of Criminal Procedure 12(b)(3)(C), new grounds for suppression are waived if not raised in a suppression motion "before trial." *See United States v. Murillo*, 288 F.3d 1126, 1135 (9th Cir. 2002) (holding that ground for suppression not included in pre-trial motion to suppress was waived); *United States v. Wright*, 215 F.3d 1020, 1026 (9th Cir. 2000) ("failure to bring a timely suppression motion constitutes a waiver of the issue"); *United States v. Restrepo-Rua*, 815 F.2d 1327, 1329 (9th Cir. 1987) (per curiam) ("Just as a failure to file a timely motion to suppress evidence constitutes a waiver, so too does a failure to raise a particular ground in support of a motion to suppress.").

to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a *reasonable cause to suspect* there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have *reasonable cause to believe* is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial.

**(b)** Any officer or employee of the United States conducting a search of a person pursuant to subsection (a) of this section shall not be held liable for any civil damages as a result of such search if the officer or employee *performed the search in good faith and used reasonable means* while effectuating such search.

19 U.S.C. § 482 (emphasis added). Section 1581(a) reads:

**Boarding vessels.**

(a) Customs officers.

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act [19 U.S.C.A. § 1701 et seq.], or at any other authorized place, without as well as within his district, and examine the manifest and other documents and

papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

19 U.S.C. § 1581(a). The obvious difference between the two statutory provisions is that the former contains language that requires an officer to have "reasonable cause to suspect" that an item to be searched was improperly imported into the country, while the latter contains no such language. As recently amended, the former also shields a searching officer from liability so long as the search was performed in "good faith and used reasonable means." Flores-Montano asserts that both sections apply to border searches such as the one conducted in the instant case, and that the border agents therefore needed "reasonable cause" or a "good faith" belief that Flores-Montano was involved in unlawful activity before searching his vehicle. He relies on *United States v. Sandoval Vargas*, 854 F.2d 1132, 1134-40 (9th Cir. 1988) (concluding that both provisions apply to searches of vehicles at the border).

**[4]** In *United States v. Taghizadeh*, 41 F.3d 1263 (9th Cir. 1994) (en banc), our unanimous en banc court held that 19 U.S.C. § 1582,[3] rather than § 482, governs searches of "arriving baggage or mail." *Id.* at 1266. In contrast, § 482 only applies to "baggage or mail or other items which have already 'arrived' but which are suspected of having been imported contrary to law." *Id.* We based this conclusion on the text of § 482, which authorizes searches of trunks and envelopes "wherever found," so long as there is reasonable cause to sus-

---

[3]19 U.S.C. § 1582 authorizes the Secretary of the Treasury to "prescribe regulations for the search of persons and baggage" and provides that "all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations."

pect that they contain "merchandise which *was imported* contrary to law." *Id.* (emphasis added). This language indicates § 482's applicability to searches of items already in the interior. The distinction between the two statutes is carried over into the regulations: § 482's reasonable-cause-to-suspect requirement is not incorporated into the regulations governing customs inspections of packages entering the country. *See* 19 C.F.R. § 145.2.[4] The en banc panel specifically overruled *DeVries v. Acree*, 565 F.2d 577 (9th Cir. 1977), in favor of the opinions of several circuits that had uniformly held that "customs officials have unlimited discretion to search incoming international packages." 41 F.3d at 1266 (citing *United States v. Glasser*, 750 F.2d 1197, 1200-05 (3d Cir. 1984); *United States v. Pringle*, 576 F.2d 1114, 1116 (5th Cir. 1978); *United States v. Emery*, 541 F.2d 887, 889 (1st Cir. 1976); *United States v. Odland*, 502 F.2d 148, 150 (7th Cir. 1974)).

Before *Taghizadeh* was decided, however, we had determined that both § 482 and § 1581 apply to searches of vehicles at the border, and that § 482's requirement of "reasonable cause to suspect" must govern inspections conducted at the border as well as in the interior.[5] *Sandoval Vargas*, 854 F.2d at 1136-38 & 1138 n.13 (citing *United States v. Soto-Soto*, 598 F.2d 545 (9th Cir. 1979)). We also held that § 482 requires only "subjective suspicion," which is supplied "whenever the person or vehicle being searched has just entered the United States from outside." *Id.* at 1139. "[T]he

___

[4]The court noted, however, that 19 C.F.R. § 145.3 may provide some additional protections to letter mail entering the country, in contrast to the package that was at issue in that case. *Taghizadeh*, 41 F.3d at 1266.

[5]In reaching this conclusion, we specifically rejected the Third Circuit's approach in *Glasser*, 750 F.2d at 1204, where the court had determined that § 482 was a specialized provision that governs smuggled goods already in the United States. *Sandoval Vargas*, 854 F.2d at 1138 n.13. In contrast, our en banc decision in *Taghizadeh* cited *Glasser* with approval. 41 F.3d at 1266.

fact of entry is sufficient, in itself, to create subjective suspicion within the meaning of section 482."[6] *Id.*

[5] By our decision in *Taghizadeh*, we clearly rejected any notion that § 482 applies to searches conducted at the border. 41 F.3d at 1266. As the application of that statute is limited to inspection of items that have already arrived in the country, the governing statute is 19 U.S.C. § 1581(a), which contains no suspicion requirement. That *Taghizadeh* involved inspection of incoming packages under 19 U.S.C. § 1582 is of no consequence to our decision here. What is important is that *Taghizadeh*'s rejection of § 482 as governing border searches completely undermined the central holding in *Sandoval Vargas*.[7] Relying on *Taghizadeh*, we hold that § 482 does not apply to vehicle searches at the border.[8] Section 1581(a) is the

---

[6] It is difficult to understand how Flores-Montano could succeed even if *Sandoval Vargas* were still good law. Under *Sandoval Vargas*, any suspicion required by § 482 would have been supplied by the fact that Flores-Montano was seeking entry into the country from the outside. To the extent Flores-Montano relies on some distinction between "routine" and "non-routine" border searches, we regard such a distinction severely undermined if not completely overruled in the context of property searches. *See United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("Complex balancing tests to determine what is a 'routine' search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles."). Nothing in the text of § 482 indicates that the routine/non-routine analysis should be reinvigorated in the statutory context, particularly when it has been so soundly rejected in the Constitutional context.

[7] We recognize that absent the abrogating effect of *Taghizadeh*, we would be bound by *Sandoval Vargas*. One panel cannot overrule another, but may "reject the prior opinion" where the prior opinion is irreconcilable with "intervening higher authority." *Overstreet v. United Bhd. of Carpenters and Joiners of Am., Local Union No. 1506*, 409 F.3d 1199, 1205 n.8 (9th Cir. 2005). "Intervening higher authority" includes intervening en banc decisions. *Id.* (citing *Cerrato v. San Francisco Cmty. College Dist.*, 26 F.3d 968, 972 n.15 (9th Cir. 1994)).

[8] This holding is further supported by the Supreme Court's own reference to § 1581(a) as "[t]he modern statute that authorized the search in this case". *Flores-Montano*, 541 U.S. at 153; *see also id.* at 153 n.1 (quoting text of § 1581(a) in full).

governing statute, and it contains no requirement that officers have any degree of suspicion for searches of vehicles at the border. The suspicionless search of Flores-Montano's gas tank did not constitute a statutory violation.[9]

Finally, Flores-Montano further argues that a recent amendment to § 482, enacted after our decision in *Taghizadeh*, demonstrates that Congress intended for § 482 to apply to border searches. *See* Trade Act of 2002, Pub. L. No. 107-210, § 341, 116 Stat. 933, 980. In 2002, § 482(b) was added, limiting liability of officers who conduct searches "in good faith [using] reasonable means." Nothing in the text of this amendment, which refers simply to searches conducted "pursuant to subsection (a)," indicates that the subsection or § 482 on the whole was to apply to border searches. Nevertheless, Flores-Montano argues that an historical note to the amendment, which requires posting of a racial profiling policy at all border facilities,[10] is evidence of Congress' intent to make § 482 applicable to border searches. Nothing in the legislative history of the statute expressly indicates this intent, nor is there any mention of our seemingly contradictory opinion in *Taghizadeh*. We decline to infer such broad intent from a requirement to post a policy at border facilities, in particular where the text of the statutory amendment itself gives no indication of such intent. If Congress wishes § 482 to be the statute governing border searches of vehicles, it may say so unequivocally. Until that time, we are bound by our precedent in *Taghizadeh*.

IV.

**[6]** In sum, we hold that 19 U.S.C. § 1581(a) governs vehi-

---

[9]We therefore need not determine whether a statutory violation would require exclusion of the evidence seized as would normally be the case where searches are conducted in violation of the Fourth Amendment.

[10]*See* 19 U.S.C. § 482, Hist. and Stat. Notes ("Requirement to Post Policy and Procedures for Searches of Passengers").

cle searches at the border. Because that statute contains no requirement that an officer have suspicion of wrongdoing in order to conduct such a search, we conclude that the search of Flores-Montano's gas tank did not violate the statute. We therefore affirm the conviction.

AFFIRMED.