**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ABD AL RAHIM HUSSEIN AL-NASHIRI,

*Plaintiff-Appellant*,

v.

BRUCE MACDONALD; PAUL OOSTBURG SANZ,

*Defendant-Appellee*.

No. 12-35475

D.C. No.
3:11-cv-05907-RJB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, Senior District Judge, Presiding

Argued and Submitted
June 3, 2013—Seattle, Washington

Filed December 20, 2013

Before: Arthur L. Alarcón, M. Margaret McKeown,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Military Commissions Act

The panel affirmed the district court's dismissal of an action brought by a plaintiff non-citizen "enemy combatant" challenging ongoing proceedings against him before a military commission at the United States Naval Base in Guantanamo Bay, Cuba.

The panel held that, pursuant to *Hamad v. Gates,* 732 F.3d 990 (9th Cir. 2013), Section 7 of the Military Commissions Act of 2006 deprived the district court of subject matter jurisdiction over plaintiff's claims, which were non-habeas claims. The panel rejected plaintiff's claims challenging the constitutionality of the Military Commissions Act.

### COUNSEL

Michel Paradis (argued), Office of the Chief Defense Counsel, Washington, D.C.; Richard Kammen, Gilroy, Kammen, Maryan & Moudy, Indianapolis, Indiana; Robert Gombiner, Law Offices of Robert Gombiner, Seattle, Washington, for Plaintiff-Appellant.

Sydney Foster (argued) and Robert M. Loeb, Attorneys, Appellate Staff, and Stuart F. Delery, Principal Deputy Assistant Attorney General, United States Department of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Justice, Civil Division, Washington, D.C.; Jenny A. Durkan, United States Attorney, Seattle, Washington, for Defendant-Appellee.

James J. Brosnahan, Somnath Raj Chatterjee, and Megan C. Kiefer, Morrison & Foerster LLP, San Francisco, California, for Amici Curiae Retired Military Admirals, Generals, and Colonels.

David H. Remes, Appeal for Justice, Silver Spring, Maryland; John T. Parry, Portland, Oregon; William J. Aceves, San Diego, California, for Amicus Curiae Physicians for Human Rights.

## OPINION

McKEOWN, Circuit Judge:

Abd Al Rahim Hussein Al-Nashiri is a noncitizen "enemy combatant" undergoing proceedings before a military commission at the United States Naval Base in Guantanamo Bay, Cuba. The charges against Al-Nashiri arose from his alleged role in three terrorist plots: the 2000 attempted bombing of the U.S.S. *The Sullivans*; the 2000 bombing of the U.S.S. *Cole*, which killed seventeen U.S. military personnel; and the 2002 bombing of the *M/V Limburg*, which killed one civilian. Al-Nashiri seeks a declaratory judgment that the military commission lacks jurisdiction to hear the charges against him because the alleged acts occurred in Yemen, where he argues no war or hostilities existed in 2000 or 2002. More specifically, he claims that Vice Admiral Bruce MacDonald (Ret.), then the Convening Authority for the Office of Military Commissions, over-stepped his

authority because "[t]he President and Congress uniformly declined to confer [war-time] status on events in Yemen" during that period.  Consistent with our recent decision in *Hamad v. Gates*, 732 F.3d 990 (9th Cir. 2013), we hold that Section 7 of the Military Commissions Act ("MCA § 7") of 2006 deprived the district court of subject matter jurisdiction over Al-Nashiri's claims.  28 U.S.C. § 2241(e).

## BACKGROUND

### I.  MILITARY COMMISSION AUTHORITY

Congress, by authorizing the use of military force following the September 11, 2001 terrorist attacks, gave the President the power to detain certain individuals as a "fundamental and accepted . . . incident to war." *Boumediene v. Bush*, 553 U.S. 723, 733 (2008) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion)). Shortly thereafter, President Bush issued an order providing for military commission trials of noncitizens he had reason to believe had been or currently were members of al-Qaida or had otherwise participated in terrorist activities directed at the United States.  Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001).  A 2004 Department of Defense order created the Combatant Status Review Tribunal to determine whether the Executive Branch had properly designated noncitizen detainees as "enemy combatants." Memorandum from Deputy Secretary of Defense Paul Wolfowitz re Order Establishing Combatant Status Review Tribunal § a (July 7, 2004), *available at* http://www.defense.gov/news/Jul2004/d20040707review.pdf. Absent such a designation, military commissions lack authority over detainees.  10 U.S.C. § 948b (providing that

the MCA's purpose is to "establish[] procedures governing the use of military commissions to try alien unlawful enemy combatants engaged in hostilities against the United States"); *cf. Hamdi v. Rumsfeld*, 542 U.S. 507, 509 (2004) (stating that "a citizen held in the United States as an enemy combatant [must] be given a meaningful opportunity to contest the factual basis for that detention," i.e. his designation as an enemy combatant).

After legal challenges on multiple fronts, in *Hamdan v. Rumsfeld*, the Supreme Court invalidated, as violations of the Uniform Code of Military Justice and the Geneva Conventions, a number of the commission procedures authorized by statute and executive order. 548 U.S. 557, 625 (2006). In response to *Hamdan*, Congress enacted the Military Commissions Act of 2006. Pub. L. No. 109–366, 120 Stat. 2600 (2006) ("2006 MCA"), 28 U.S.C. § 2241(e) (2006); *see Boumediene*, 553 U.S. at 735. The 2006 MCA authorized trial by military commission for "alien unlawful enemy combatant[s]." 2006 MCA § 3.

In 2009, Congress largely superseded the 2006 MCA and provided detainees certain additional procedural safeguards. Military Commissions Act of 2009, Pub. L. No. 111–84, 123 Stat. 2574 (2009) ("2009 MCA"), 10 U.S.C. §§ 948a *et seq.* Relevant to these proceedings, the 2009 MCA authorized the President to establish military commissions to try "alien unprivileged enemy belligerents," as opposed to the earlier designation, "enemy combatants," for violations of the law of war and other offenses triable by military commissions. 10 U.S.C. §§ 948b(a)–(b), 948c. The offenses specified in the 2009 MCA are "triable by military commission . . . only if the offense is committed in the context of and associated with hostilities." *Id.* § 950p(c). Under the 2009 MCA,

hostilities are "any conflict subject to the laws of war." *Id.*
§ 948a(9).

## II. AL-NASHIRI'S PROCEEDINGS[1]

Al-Nashiri, a Saudi national, was arrested in Dubai in
2002 and held in U.S. custody. In September 2006, Al-
Nashiri was transferred to Guantanamo Bay, where he
remains in detention. The following year, a Combatant Status
Review Tribunal determined that Al-Nashiri was an "enemy
combatant."[2]  Charges against Al-Nashiri alleging nine
violations of the MCA were referred to the Military
Commission Convening Authority in 2011. The charges
included the three referenced al-Qaida terrorist plots,
conspiring with Osama bin Laden and others between 1996
and 2002 to "commit Terrorism and Murder in Violation of
the Law of War," and other related charges.

Following referral of these charges, Al-Nashiri formally
requested that MacDonald not convene a military
commission.   Al-Nashiri principally argued that the
commission could not try him for the alleged offenses
because they "did not occur in the context of and were not
associated with hostilities." This argument was based on a
statement by President Clinton in response to the U.S.S. *Cole*
bombing suggesting that it was a peacetime attack;
Congress's failure to declare war or pass any other

---

[1] In reviewing de novo the government's motion to dismiss, we accept
as true the factual allegations in Al-Nashiri's Complaint. *See Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009).

[2] Under the 2009 MCA, Al-Nashiri is now classified as an "alien
unprivileged enemy belligerent." 10 U.S.C. § 948c.

authorization for the use of military force in response to the U.S.S. *Cole* bombing; President Bush's failure to certify the existence of hostilities in Yemen until his War Powers Resolution report to Congress in September 2003; and the fact that Congress first recognized an armed conflict in Yemen in a 2009 Senate resolution.[3]

MacDonald issued orders convening a commission to try Al-Nashiri for the charges associated with the three terrorist plots. In response, Al-Nashiri filed suit in the Western District of Washington naming MacDonald, the sole defendant, in his individual capacity. The Complaint alleges that MacDonald's military commission referral violated 10 U.S.C. § 950p(c); Article III § 2 of the Constitution; and the Fifth, Sixth, and Eighth Amendments because the alleged offenses did not "occur," as a matter of law, "in the context of and [were] not associated with hostilities." He requested a declaratory judgment stating that "neither the President nor Congress certified the existence of an armed conflict subject to the laws of war in Yemen prior to September 2003" and

---

[3] *See*, *e.g.*, *The President's Radio Address*, 36 Weekly Comp. Pres. Doc. 2176, 2177 (Oct. 14, 2000) (containing President Clinton's remarks in response to the U.S.S. *Cole* bombing in which he stated that "even when America is not at war, the men and women of our military risk their lives every day" and that "[n]o one should think for a moment that the strength of our military is less important in times of peace"); *Letter to Congressional Leaders Reporting on Efforts in the Global War on Terrorism*, 39 Weekly Comp. Pres. Doc. 1247, 1247 (Sept. 19, 2003) (providing President Bush's 2003 War Powers Resolution report to Congress in which he stated that the United States had undertaken "military operations against al-Qaida and other international terrorists in the Horn of Africa region, including Yemen"); S. Res. 341, 111th Cong. (2009) (enacted) (expressing concern about conflict between rebel forces and the Government of Yemen resulting in civilian displacement "since 2004").

that MacDonald "acted beyond his authority and in violation
of the constitution by issuing orders to convene a military
commission with the power to recommend the sentence of
death for allegations relating to" the three bombing incidents.

The district court dismissed Al-Nashiri's suit for lack of
subject matter jurisdiction on the grounds that MCA § 7 and
sovereign immunity barred the claims. In the alternative, the
court reasoned that even if it had subject matter jurisdiction,
principles of restraint articulated in *Schlesinger v.
Councilman*, 420 U.S. 738 (1975), counseled in favor of the
court's abstention from exercising equitable jurisdiction.

## DISCUSSION

### I.   MILITARY COMMISSIONS ACT § 7

We first consider the threshold question of whether MCA
§ 7 stripped the district court of subject matter jurisdiction
over Al-Nashiri's action. The answer, according to *Hamad*,
is yes.

Section 7 of the Military Commissions Act provides:

> (1) No court, justice, or judge shall have
> jurisdiction to hear or consider an application
> for a writ of habeas corpus filed by or on
> behalf of an alien detained by the United
> States who has been determined by the United
> States to have been properly detained as an
> enemy combatant or is awaiting such
> determination.

(2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

28 U.S.C. § 2241(e).

Subsection (1) is not applicable because Al-Nashiri is not seeking a writ of habeas corpus. Subsection (2), however, plainly applies to Al-Nashiri's action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (internal quotation marks omitted)). To begin, Al-Nashiri seeks equitable relief based upon a non-habeas action against an agent of the United States, MacDonald as the Convening Authority. Al-Nashiri, a Saudi national, does not contest his designation as an "enemy combatant." Instead, he challenges the government's authority to proceed with his military commission trial, arguing that the alleged offenses did not occur in the context of hostilities. Finally, Al-Nashiri does not fall under any of the exceptions in subsection (2) permitting courts to hear certain cases under the Detainee Treatment Act. *See* Detainee Treatment Act of 2005, Pub. L.

No. 109–148, div. A, title X, § 1005(e), 119 Stat. 2680 (providing the D.C. Circuit with jurisdiction over limited challenges, such as contesting combatant status review standards and procedures and final decisions of a military commission). Based on the allegations in the Complaint and under the plain terms of § 2241(e)(2), MCA § 7 bars the district court from exercising jurisdiction over Al-Nashiri's claims.

Recognizing the difficulty of overcoming the plain language of MCA § 7, Al-Nashiri nonetheless argues that MCA § 7 did not strip the district court of subject matter jurisdiction because the Supreme Court in *Boumediene* struck down MCA § 7 in its entirety, MCA § 7 does not apply to the claims in this suit, and MCA § 7 is unconstitutional.[4]

## A. MILITARY COMMISSIONS ACT § 7 AFTER *BOUMEDIENE*

In *Boumediene*, the Supreme Court held that MCA § 7 "operate[d] as an unconstitutional suspension of the writ" of habeas corpus for military detainees held in Guantanamo Bay. 553 U.S. at 733. According to the Court, the Suspension Clause had "full effect at Guantanamo Bay" and MCA § 7 did not "purport to be a formal suspension of the writ." *Id.* at 771. In so holding, the Court did not specify that a particular subsection of MCA § 7 was unconstitutional. *Id.*

---

[4] In light of our decision, we need not reach Al-Nashiri's other arguments regarding abstention under *Schlesinger v. Councilman* or whether MacDonald can assert sovereign immunity. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (internal quotation marks and citation omitted)).

at 795.  The Court of Appeals for the D.C. Circuit later held that *Boumediene* "applied only to the stripping of habeas jurisdiction," the first section of the statute, leaving in force § 2241(e)(2).  *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 319 (D.C. Cir. 2012).

In *Hamad*, we agreed with the D.C. Circuit, holding that "the logic and context of [*Boumediene*] make clear that the Supreme Court was addressing only § 2241(e)(1)." 732 F.3d at 1000.  Reasoning that "§ 2241(e)(2) is capable of 'functioning independently,' and is consistent with Congress's basic objectives in enacting the MCA," we concluded that § 2241(e)(2) is severable from § 2241(e)(1) and "remains in effect, provided that it is constitutional." *Id.* at 1003.  *Hamad* forecloses Al-Nashiri's argument that *Boumediene* struck down MCA § 7 as a whole.

**B.   APPLICABILITY OF MCA § 7 TO THIS SUIT**

Even if MCA § 7 survives *Boumediene*, Al-Nashiri argues that MCA § 7 does not apply to this suit for three reasons: he is suing MacDonald "in his individual capacity," not as an "agent" of the United States; he is not objecting to "any aspect of . . . trial," but rather to the creation of the military commission itself; and the legislative history of the 2009 MCA counsels against reading MCA § 7 to apply to his suit. We disagree.

We are unpersuaded by Al-Nashiri's claim that his suit is against MacDonald as an individual and not as an agent of the United States in his official capacity.  The language of the Complaint belies this assertion.  The declaratory relief that Al-Nashiri seeks is only meaningful if it binds the U.S. government and its agents.  He seeks a declaration that

"neither the President nor Congress certified the existence of an armed conflict subject to the laws of war in Yemen prior to September 2003" and that MacDonald "acted beyond his authority and in violation of the constitution by issuing orders to convene a military commission with the power to recommend the sentence of death for allegations relating to" the three bombing incidents. This requested relief is aimed either at invalidating the referral order or convincing the Convening Authority that it does not have jurisdiction over Al-Nashiri, and would be futile if not directed "against the United States or its agents" within the meaning of MCA § 7. *Cf. Wolfe v. Strankman*, 392 F.3d 358, 367 n.2 (9th Cir. 2004) (holding in a 42 U.S.C. § 1983 action that the plaintiff sought declaratory and injunctive relief only available against defendants in their official capacities).

Because this is an official capacity suit, we grant the government's motion to substitute MacDonald with Paul Oostburg Sanz, who replaced MacDonald as the Convening Authority in March 2013. *See* Fed. R. App. P. 43(c)(2) ("When a public officer who is a party to an appeal . . . in an official capacity . . . ceases to hold office . . . [t]he public officer's successor is automatically substituted as a party.").

Al-Nashiri's citation to *Larson v. Domestic & Foreign Commerce Corporation*, 337 U.S. 682 (1949), is unavailing. In *Larson*, the Supreme Court held that sovereign immunity does not bar suit for specific relief against a government official when, for example, the official purports to act as an individual and acts *ultra vires*, or if the official commits an unconstitutional act because the "statute or order conferring power upon the officer to take action . . . is claimed to be unconstitutional." *Id*. at 689–90. Not only is MCA § 7 constitutional, the only action MacDonald took—issuing

orders to convene a military commission—was in his official capacity. Congress also impliedly sought to limit judicial review here by enacting an alternative remedial scheme. As the Supreme Court explained, "[individual] relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient." *Id.* at 690. Al-Nashiri cannot simply convert his suit to an "individual" action by invoking that magic word in his Complaint. We need not address whether his suit is barred by sovereign immunity because it falls squarely within the jurisdiction-stripping provisions of MCA § 7.

Al-Nashiri's effort to sidestep the jurisdictional bar on the ground that he is not objecting to the creation of the military commission itself fares no better. He urges that his challenge to the military commission's authority over the charges against him does not constitute "any aspect of . . . trial." The broad phrase—"relating to *any aspect* of . . . trial"—naturally includes the threshold question whether the tribunal has jurisdiction over the parties and claims. MCA § 7(2). Indeed, Congress expressly provided the military commissions with this authority, stating that a "military commission is a competent tribunal to make a finding sufficient for jurisdiction." 10 U.S.C. § 948d. We note that after briefing in this appeal, the Military Commissions Trial Judiciary, Guantanamo Bay, Cuba, denied without prejudice Al-Nashiri's motion to dismiss based on his claim that the Convening Authority exceeded his authority. Order, No. AE104 F (Jan. 13, 2013). The military judge held that '[w]hether hostilities existed between Al Qaeda and the United States on the dates of the accused's alleged acts is a question of fact and an element of proof, which must be carried by the government." Order at 5. The tribunal further

held that, as a matter of law, it owed "judicial deference" to the political branches' collective determination as to the existence of hostilities.  Order at 6.

Al-Nashiri also points to the legislative history of the 2009 MCA, claiming that it undermines the application of MCA § 7 to his claims.  The 2009 MCA omits 10 U.S.C. § 950j(b), a statutory provision from the 2006 MCA that barred courts from hearing "any claim or cause of action whatsoever . . . relating to the prosecution, trial, or judgment of a military commission."  Al-Nashiri thus argues that, in effectively repealing this provision, Congress could not have intended to maintain such broad jurisdiction-stripping language in MCA § 7 for non-habeas claims.

We return to the "plain language of the statute, which controls unless its application leads to unreasonable or impracticable results."  *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d 1126, 1133 (9th Cir. 2010) (internal quotation marks omitted).  As discussed above, the plain language of MCA § 7 controls—all judicial jurisdiction is barred for a non-habeas action.  This result is both reasonable and practicable.   The history of § 950j(b) points to no exception for non-habeas claims.  Nor was the section singled out for omission.   Rather, Congress replaced the entire chapter of which it was a part.  *See* Pub. L. No. 111–84, div. A, tit. XVIII, § 1802, 123 Stat. at 2574–612.  It revised the language governing military commissions and granted the D.C. Circuit exclusive authority to "determine the validity of a final judgment rendered by a military commission" when other review procedures had been exhausted.   10 U.S.C. § 950g(a).   Nothing in the text suggests that Congress intended to exempt non-habeas claims from the requirements of MCA § 7.

## C.  CONSTITUTIONALITY OF MCA § 7

Al-Nashiri also claims that MCA § 7 violates his right to equal protection under the Fifth Amendment[5] and constitutes a bill of attainder.  Both arguments were rejected in *Hamad*, where we held that "Congress's decision in § 2241(e)(2) to preclude only alien detainees captured as part of the war on terror from bringing damages actions easily passes rational basis review."  732 F.3d at 1006.  We concluded that the classification served a "legitimate foreign policy concern[] by ensuring that members of the armed forces are not unduly chilled in conducting the war on terror by concerns about foreign nationals targeting them with damages claims."  *Id.* (internal citation and quotation marks omitted).

*Hamad* also addressed an identical bill of attainder challenge.  Our rejection was swift: § 7 does not violate the Bill of Attainder Clause, U.S. Const. art. I, § 9, cl. 3, "because it does not inflict legislative punishment" as historically understood.  *Hamad*, 732 F.3d at 1004.  "Congress enacted § 2241(e) to limit and channel federal court review of detention and military commission decisions,

---

[5] Although Al-Nashiri did not raise this Fifth Amendment argument in the district court, we consider it here because it is a question of law that easily is disposed of by *Hamad*.  *United States v. Flores-Montano*, 424 F.3d 1044, 1047 (9th Cir. 2005) ("While issues not raised to the district court normally are deemed waived, we have recognized three narrow exceptions to this general rule," including where "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court") (internal quotation marks omitted)).

not to impose any particular punishment on military detainees." *Id.*

**AFFIRMED.**