# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 22, 2013          Decided January 17, 2014

No. 12-5017

ABDUL RAHIM ABDUL RAZAK AL JANKO,
APPELLANT

v.

ROBERT M. GATES, FORMER SECRETARY OF DEFENSE, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01702)

---

*Paul L. Hoffman* argued the cause for the appellant. *Terrence P. Collingsworth*, *Jennifer Green* and *Judith Brown Chomsky* were on brief. *Catherine E. Sweetser* entered an appearance.

*Janis H. Brennan* was on brief for *amici curiae* Scholars of State Law and International Law in support of the appellant.

*Sydney Foster*, Attorney, United States Department of Justice, argued the cause for the appellees. *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Matthew M. Collette*, Attorney, *Mary Hampton Mason*, Senior Trial

Counsel, and *Siegmund F. Fuchs*, Trial Attorney, were on brief.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: As part of its global war on terrorism, the United States detained Abdul Rahim Abdul Razak al Janko in Afghanistan and at United States Naval Station Guantanamo Bay (Guantanamo) in Cuba for seven years before the district court granted him a writ of habeas corpus and ordered that diplomatic efforts be undertaken to secure his release. He now seeks to recover for injuries sustained during his detention. Because the Congress has, in unmistakable language, denied the district court jurisdiction to entertain his claims, we affirm the dismissal of his claims.

## I.   Background

The Appellant is a Syrian citizen who alleges that he travelled to Afghanistan in January 2000. Shortly thereafter, the Taliban forced him to confess to spying for the United States and Israel and imprisoned him in Kandahar, where he was tortured by his Taliban captors. After the attacks on our homeland on September 11, 2001, U.S. forces commenced military operations in Afghanistan to subdue al Qaeda and its Taliban allies. Shortly after the operations began, the new Afghan government liberated the Appellant's prison. Allegedly on the basis of misinterpreted intelligence, however, U.S. officials identified the Appellant as an enemy combatant.[1]   Pursuant to the President's congressionally

_____

[1] The Executive Branch defines "enemy combatant" as "an individual who was part of or supporting Taliban or al Qaida forces,

conferred authority, *see* Authorization for Use of Military Force (AUMF), Pub. L. No. 107-40, 115 Stat. 224, 224 (2001), to detain enemy combatants "for the duration of the particular conflict in which they were captured," *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion); *see also Ali v. Obama*, 736 F.3d 542, 544 (D.C. Cir. 2013), U.S. forces captured the Appellant and transferred him to Guantanamo in May 2002. He alleges that, for the next seven years, U.S. officials subjected him to torture, physical and psychological degradation and other forms of mistreatment. During his detention, two Combatant Status Review Tribunals (CSRTs)—executive-branch tribunals convened to determine the status of Guantanamo detainees, *see Maqaleh v. Hagel*, Nos. 12-5404 et al., 2013 WL 6767861, at *8 (D.C. Cir. Dec. 24, 2013)—determined that the Appellant was lawfully detained as an enemy combatant.[2]

The Appellant sought to obtain release from detention by filing a petition for a writ of habeas corpus in district court. After the Supreme Court decided that Guantanamo detainees have a constitutional right to challenge the basis of their detentions, *Boumediene v. Bush*, 553 U.S. 723, 771 (2008),

---

or associated forces that are engaged in hostilities against the United States or its coalition partners." *Parhat v. Gates*, 532 F.3d 834, 838 (D.C. Cir. 2008) (quotation marks omitted); *see also Al-Bihani v. Obama*, 590 F.3d 866, 872 (D.C. Cir. 2010) (adopting executive-branch definition of enemy combatant in habeas cases).

[2] In addition to the CSRT decisions, two Administrative Review Boards (ARBs) determined that the Appellant was properly detained. The United States Secretary of Defense (Secretary) established the ARBs to review whether a detainee should remain detained "based on an assessment of various factors, including the continued threat posed by each detainee." *Hamad v. Gates*, 732 F.3d 990, 994 (9th Cir. 2013); *see also Boumediene v. Bush*, 553 U.S. 723, 821 (2008) (Roberts, C.J., dissenting) (describing ARBs).

the district court granted his petition, *Al Ginco v. Obama*, 626 F. Supp. 2d 123, 130 (D.D.C. 2009), and the United States released him in October 2009. Nearly one year later, he filed a complaint in district court against the United States and twenty-six U.S. officials (collectively Government) for injuries he suffered during his detention. His complaint, as amended, stated claims under the Alien Tort Statute, 28 U.S.C. § 1350; the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*; the Enforcement Act of 1871, 42 U.S.C. § 1985; and for violation of his Fourth and Fifth Amendment rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Holding that, *inter alia*, section 7(a) of the Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, § 7(a), 120 Stat. 2600, 2635 (codified at 28 U.S.C. § 2241(e) (2006)), ousted it of jurisdiction, the district court dismissed the Appellant's claims. *Janko v. Gates*, 831 F. Supp. 2d 272, 278–81 (D.D.C. 2011). He timely appealed.

## II.  Analysis

### A.  Standard of Review

"We review *de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction." *Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 231 (D.C. Cir. 2013). Because the Government has not disputed the facts relevant to jurisdiction, we accept the Appellant's allegations as true and review only the district court's application of the law. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197–98 (D.C. Cir. 1992).

The question presented in this appeal is whether the district court has jurisdiction over all, or any, of the Appellant's claims. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by

Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because the Appellant's claims raise questions of federal law, they are within the district court's constitutional jurisdiction. *See Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 823–24 (1824) (Marshall, C.J.). Our task, then, is to decide whether the Congress has conferred authority on the district court to hear his claims and, if it has not, whether the Congress has constitutional authority to withhold jurisdiction.

The first question turns on the meaning of section 7(a) of the MCA. That section provides:

(e)(1) No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

(2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

28 U.S.C. § 2241(e) (2006). In *Al-Zahrani v. Rodriguez*, we held that section 2241(e)(2) withdraws the district court's jurisdiction over damages actions regarding any aspect of the

detention of an alien previously determined by a CSRT to be properly detained as an enemy combatant. 669 F.3d 315, 318–19 (D.C. Cir. 2012); *see also Hamad v. Gates*, 732 F.3d 990, 995–96 (9th Cir. 2013); *cf. Al-Nashiri v. MacDonald*, No. 12-35475, 2013 WL 6698066, at \*3 (9th Cir. Dec. 20, 2013). Although the *Al-Zahrani* holding covers the Appellant's claims, he argues that the fact that he obtained a writ of habeas corpus, which the *Al-Zahrani* detainees did not, moves his claims outside section 2241(e)(2)'s ambit. And even if it does not, he argues, section 2241(e)(2) is unconstitutional as applied to his claims. We consider each argument in turn.

## B.  Statutory Construction

"The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion of Rehnquist, C.J.) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–254 (1992)); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).[3] The parties agree on the relevant text:

> [N]o court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of

---

[3] The Appellant argues that we need not decide section 2241(e)(2)'s meaning because the Supreme Court struck it down in *Boumediene*. We have previously rejected this argument and do so again. *Al-Zahrani*, 669 F.3d at 319; *Kiyemba v. Obama* (*Kiyemba II*), 561 F.3d 509, 512 n.1 (D.C. Cir. 2009); *see also Al-Nashiri*, 2013 WL 6698066, at \*4; *Hamad*, 732 F.3d at 1000.

confinement of an alien who is or was detained by the United States and *has been determined by the United States to have been properly detained* as an enemy combatant . . . .

28 U.S.C. § 2241(e)(2) (emphasis added). This action is undoubtedly an action (1) other than habeas corpus or direct review of a CSRT determination (2) against the United States or its agents (3) brought by an alien (4) previously detained by the United States, which action (5) relates to an aspect of his detention. The crux of the parties' dispute is whether the Appellant was "determined by *the United States* to have been properly detained as an enemy combatant." *Id.* (emphasis added).

### 1. Meaning of "the United States"

The Government argues that the statute bars the Appellant's claims because "the United States" means only "the Executive Branch." Because the CSRT is an executive-branch tribunal, the Government contends that the first CSRT's determination that the Appellant was properly detained triggered the jurisdictional bar. The Appellant, citing to a dictionary and to cases interpreting unrelated statutes, argues that "the United States" ordinarily encompasses all three branches of the federal government and not solely the Executive Branch. He argues that the bar does not apply to him because the district court's grant of the writ is a determination by the United States "that he was *never* properly detained as an enemy combatant." Pl.-Appellant's Opening Br. 2 (Janko Br.), *Janko v. Gates*, No. 12-5017 (D.C. Cir. Jan. 9, 2013) (emphasis in original).

The Appellant is of course correct that, in the absence of a statutory definition, we give statutory language its "ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476

(1994); *see also Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004).  The rule emanates from the common-sense notion that the Congress, like any speaker, desires to be understood and, "in the absence of contrary indication," *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2042 (2012), uses words in the way they are ordinarily used and understood, *see Watson v. United States*, 552 U.S. 74, 79 (2007); *Maillard v. Lawrence*, 57 U.S. (16 How.) 251, 261 (1853).  But "plain meaning" takes us only so far.  Because many words are susceptible of multiple meanings, plain meaning is frequently not so plain.  The expression "the United States" is a case in point.  Those words in a newspaper article about World Cup competition— "the United States took an early lead on its way to defeating Mexico"—likely mean something quite different from the same words in an article about foreign policy—"the United States has entered bilateral trade talks with Mexico."  Turning to the dictionary entry for "United States" is unlikely to resolve the ambiguity. *See* A. Raymond Randolph, *Dictionaries, Plain Meaning, and Context in Statutory Interpretation*, 17 HARV. J.L. & PUB. POL'Y 71, 72 (1994) ("[C]iting to dictionaries creates a sort of optical illusion, conveying the existence of certainty—or 'plainness'—when appearance may be all there is."); *see also Country Mut. Ins. Co. v. Am. Farm Bureau Fed'n*, 876 F.2d 599, 600 (7th Cir. 1989).  Instead, our interpretation of "the United States" is informed by the context in which the words appear. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *Deal v. United States*, 508 U.S. 129, 132 (1993).

If "the United States" seems "ambiguous in isolation," it is "clarified by the remainder of the statutory scheme[] because the same terminology is used elsewhere in a context that makes its meaning clear . . . ." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371

(1988).  The statute applies to any alien "detained by *the United States*" and "determined by *the United States* to have been properly detained as an enemy combatant." 28 U.S.C. § 2241(e)(2) (emphases added).  In light of the "established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning," the Congress's use of the same words to describe the detaining authority and the authority responsible for making the propriety-of-detention determination leads us to conclude that they are one and the same. *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998); *see also Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007).  As the Congress well understood when it enacted the MCA, the detention of aliens as enemy combatants is an exclusively executive function. *See Boumediene*, 553 U.S. at 782–83 (distinguishing between those "detained by executive order" at Guantanamo and those held pursuant to criminal sentence); *Hamdi*, 542 U.S. at 516–17 (holding AUMF gives "the Executive . . . the authority to detain citizens who qualify as 'enemy combatants' "); *Rasul v. Bush*, 542 U.S. 466, 475, 483 n.15, 485 (2004) (recognizing that detainees at Guantanamo are in exclusively executive detention); Detention, Treatment, and Trial of Certain Non–Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833, 57,834 (Nov. 13, 2001) (executive order authorizing detention of enemy combatants); *see also* Oral Argument 13:17, *Janko v. Gates*, No. 12-5017 (D.C. Cir. Oct. 22, 2013) (The Appellant's counsel conceding that "courts ordinarily don't detain people so the reference to 'the United States' in terms of an 'alien detained by the United States' ordinarily" refers to the Executive Branch); *cf. Uthman v. Obama*, 637 F.3d 400, 402 (D.C. Cir. 2011).  Because the detaining authority referred to as "the United States" in section 2241(e)(2) is exclusively the Executive Branch, and the determination triggering the jurisdictional bar is made by the detaining

authority, a "determin[ation] by the United States" is one made by the Executive Branch.

Section 2241(e)(1), enacted as part of the same statutory subsection, confirms our interpretation.[4] The provision ousts all federal courts of jurisdiction over a habeas petition filed by any alien "detained by the United States" and "determined by the United States to have been properly detained as an enemy combatant." 28 U.S.C. § 2241(e)(1). This provision is plainly *in pari materia* with section 2241(e)(2) and so we must give a consistent interpretation to the two provisions' identical language. *See Nijhawan v. Holder*, 557 U.S. 29, 39 (2009) ("Where, as here, Congress uses similar statutory language

---

[4] We recognize that *Boumediene* struck down section 2241(e)(1) as it applies to Guantanamo. *Maqaleh*, 2013 WL 6767861, at *18; *Kiyemba II*, 561 F.3d at 512 n.2. *Boumediene* does not, however, preclude us from considering section 2241(e)(1) when interpreting section 2241(e)(2). Our task is to give section 2241(e)(2) the meaning it was understood to have when the Congress enacted it. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612–13 (1992) ("The meaning of [the relevant text] is the meaning generally attached to that term . . . at the time the statute was enacted."); *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[W]ords will be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute . . . ."); *see also Amoco Prod. Co v. S. Ute Indian Tribe*, 526 U.S. 865, 873–74 (1999). Particularly because the two provisions were enacted as part of one statutory section and are *in pari materia*—indeed, paragraph (e)(2) refers to paragraph (e)(1), *see Boumediene*, 553 U.S. at 737—we cannot apprehend the original meaning of section 2241(e)(2) within the context of the "whole law" enacted by the Congress without reference to section 2241(e)(1). *United States v. Heirs of Boisdoré*, 49 U.S. (8 How.) 113, 122 (1849); *see also* 2B NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 51.04 (7th ed. 2007).

and similar statutory structure in two adjoining provisions, it normally intends similar interpretations."); *cf. Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972). This we can easily do. In a statute depriving federal courts of jurisdiction to decide the lawfulness of *executive* detention, the phrase "determined by the United States" must refer to an executive-branch determination. We will not " 'attribute a schizophrenic intent to the' " Congress by reading "the United States" to refer to executive-branch determinations in section 2241(e)(1) but not in section 2241(e)(2). *Yousuf v. Samantar*, 451 F.3d 248, 256 (D.C. Cir. 2006) (quoting *Marek v. Chesny*, 473 U.S. 1, 21 (1985)).[5]

Finally, we find support for our interpretation in the version of section 2241(e)(2) which the MCA amended. *See Johnson v. United States*, 529 U.S. 694, 710 (2000) ("[W]hen a new legal regime develops out of an identifiable predecessor, it is reasonable to look to the precursor in fathoming the new law."); *see also Hamilton v. Rathbone*, 175 U.S. 414, 421 (1899). The Congress originally added 28 U.S.C. § 2241(e) to the U.S. Code in section 1005(e) of the Detainee Treatment Act (DTA) of 2005, Pub. L. 109-148, § 1005, 119 Stat. 2739, 2742–43. Section 1005(e)(2) granted this Court exclusive jurisdiction to review CSRT determinations, *see Bismullah v. Gates*, 501 F.3d 178, 183 (D.C. Cir. 2007), *vacated and remanded on other grounds by* 554 U.S. 913 (2008), and section 1005(e)(1) (the portion codified at 28 U.S.C. § 2241(e)(2)) ousted the federal courts

---

[5] Because the statutory text is unambiguous, we need not consult the MCA's legislative history. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."); *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 212 (D.C. Cir. 2013).

of jurisdiction to consider any non-habeas claim "against the United States or its agents relating to any aspect of the detention by the Department of Defense of an alien at Guantanamo Bay, Cuba, who . . . has been determined *by the United States Court of Appeals for the District of Columbia Circuit* [D.C. Circuit]. . . to have been properly detained as an enemy combatant," DTA § 1005(e)(1), 119 Stat. at 2742 (codified at 28 U.S.C. § 2241(e)(2) (Supp. V 2005)) (emphasis added).

Responding to the Supreme Court's interpretation of section 1005(e) of the DTA, *see Hamdan v. United States*, 548 U.S. 557, 572–84 (2006), the Congress amended 28 U.S.C. § 2241(e) in the MCA. Despite retaining our review of CSRT determinations, *see* MCA § 7(a), 120 Stat. at 2636 (excepting from jurisdictional bar actions brought under "paragraph[] (2) . . . of section 1005(e) of the" DTA), section 7(a) replaced both "the Department of Defense" (the detaining authority) and the "D.C. Circuit" (the relevant status determiner) with "the United States," *compare* DTA § 1005(e)(1), 119 Stat. at 2742, *with* MCA § 7(a), 120 Stat. at 2635–36. The change is significant. Under the DTA, the relevant propriety-of-detention determination was made by a tribunal (the D.C. Circuit) independent of the detaining authority (the Department of Defense). Under the MCA, however, the Congress abandoned the independent, judicial propriety-of-detention determination in favor of a non-judicial determination made by the same entity that detains the alien (the United States). Adopting the Appellant's interpretation would deprive the changes made by section 7(a) of any "real and substantial effect" and flout the Congress's manifest intent to have section 2241(e)(2)'s applicability turn on a non-

judicial status determination. *Stone v. INS*, 514 U.S. 386, 397 (1995).[6]

### 2. The Appellant's Counterarguments

The Appellant counters our interpretation by arguing that we effectively read "properly" out of the statute. His contention rests on the belief that the statute bars claims only from detainees who received "proper" CSRT determinations, to wit, those detainees who *in fact* are enemy combatants. A CSRT determination is "proper," apparently, if a habeas court subsequently reaches the same conclusion. Because the district court in *Al Ginco* disagreed with the Appellant's two CSRTs, he argues that he is not in fact an enemy combatant and section 2241(e)(2) does not apply.

The Appellant's argument results in a very subtle rewriting of the statute. The statute applies to an alien "determined by the United States to have been *properly* detained as an enemy combatant." 28 U.S.C. § 2241(e)(2)

---

[6] The Appellant views the DTA differently. He argues that, because section 2241(e)(2) preserved this Court's review of CSRT determinations, the Congress contemplated a "role" for "the Judiciary . . . in determining whether someone had been properly detained." Appellant's Reply Br. 10, *Janko v. Gates*, No. 12-5017 (D.C. Cir. Apr. 15, 2013). Although we have since invalidated section 1005(e)(2) of the DTA, *Bismullah v. Gates*, 551 F.3d 1068, 1072–73 (D.C. Cir. 2009), we agree that the Congress preserved a "role" for a particular court in the status determination process. But that fact does not avail him for two reasons. First, the only "role" was for this Court alone, not for the district court that granted his habeas petition. Second, the relevant question is not whether the judiciary has a "role" in status determinations generally but rather which branch's determination triggers section 2241(e)(2)'s jurisdictional bar. For the reasons we have already given, the Executive Branch's determination alone triggers the bar.

(emphasis added). He reads "properly" to modify "determined," thereby requiring that a CSRT *correctly* determine a detainee's status in order that section 2241(e)(2) apply. But "properly" does not modify "determined"; it modifies "detained." The phrase "properly detained as an enemy combatant" identifies the type of determination the Executive Branch must make, *viz.*, a determination that the detainee meets the AUMF's criteria for enemy-combatant status. *See, e.g.*, *Barhoumi v. Obama*, 609 F.3d 416, 423, 432 (D.C. Cir. 2010) (detainee is "properly detained pursuant to the AUMF" if he meets the requirements for enemy combatant status). But the statute does not say that the bar applies to an alien whom "the United States has *properly* determined to have been properly detained as an enemy combatant." It requires only that the Executive Branch determine that the AUMF authorizes the alien's detention without regard to the determination's correctness. Conditioning the statute's applicability on the accuracy of the Executive Branch's determination would do violence to the statute's clear textual directive.[7]

The Appellant protests that if the bar applies even to incorrect CSRT determinations, then it applies to every person detained by the United States under the AUMF. He argues that every detained alien has at least once been determined by someone in the Executive Branch—a soldier or an intelligence operative in the field, for example—to be an

---

[7] More fundamentally, the Appellant's contention that a successful habeas petition makes any earlier CSRT status determination "improper" has no textual footing. In the very statutory subsection erecting the jurisdictional bar, the Congress ousted the district courts from considering his petition. The statute cannot be fairly read to include within the meaning of "determined by the United States" a judicial decision which, in the same statutory section, the Congress attempted to preclude.

enemy combatant. *Cf. Boumediene*, 553 U.S. at 783 (characterizing "the CSRT process as direct review of the Executive's battlefield determination that the detainee is an enemy combatant"). If that determination is enough, he argues, the mere fact of capture bars all claims for detention-related injuries, a result the Congress could not possibly have intended.

We need not decide today the full extent of the meaning of "the United States." In holding that section 2241(e)(2) barred claims brought on behalf of aliens determined by CSRTs to have been properly detained, *Al-Zahrani* necessarily held that a CSRT determination is a determination "by the United States," *see Al-Zahrani*, 669 F.3d at 317, 319, and we are bound by that holding, *see LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). Moreover, whatever else "the United States" meant in 2006, "the contextual background against which Congress was legislating, including relevant practices of the Executive Branch which presumably informed Congress's decision, prior legislative acts, and historical events" makes clear that the words undoubtedly encompassed CSRTs. *United States v. Wilson*, 290 F.3d 347, 354 (D.C. Cir. 2002); *see also Nat'l Lead Co. v. United States*, 252 U.S. 140, 147 (1920) (citing *United States v. Bailey*, 34 U.S. (9 Pet.) 238, 256 (1835) (Story, J.).

Apparently concerned about what the Supreme Court's *Hamdi* and *Rasul* decisions[8] portended for aliens detained as

---

[8]In *Hamdi*, the Supreme Court held that the Fifth Amendment required the President to afford any U.S. citizen detained as an enemy combatant an opportunity to challenge the basis of his detention, *Hamdi*, 542 U.S. at 533 (plurality opinion), and *Rasul* held that Guantanamo detainees could invoke the extant habeas

enemy combatants at Guantanamo, the Secretary established CSRTs to permit detainees to challenge the Executive Branch's status determinations. Ashley S. Deeks, *The Observer Effect: National Security Litigation, Executive Policy Changes, and Judicial Deference*, 82 FORDHAM L. REV. 827, 842–43 & n.63 (2013) (citing David A. Martin, *Judicial Review and the Military Commissions Act: On Striking the Right Balance*, 101 AM. J. INT'L L. 344, 349 (2007)). The next year, the Congress in the DTA instructed the Secretary to submit to the Congress "a report setting forth . . . the procedures of the [CSRTs] . . . established by [him] . . . for *determining the status of the detainees held at Guantanamo Bay*." DTA § 1005(a)(1)(A), 119 Stat. at 2740–41 (emphasis added). And in section 1005(e)(2), entitled "Review of Decisions of [CSRTs] of *Propriety of Detention*," the Congress gave this Court "exclusive jurisdiction to determine the validity of any final decision of a [CSRT] that *an alien is properly detained as an enemy combatant*." *Id.* § 1005(e)(2)(A), 119 Stat. at 2742 (emphases added). The language of the DTA, and the MCA's reference thereto in section 7(a), demonstrates that the Executive Branch's practice of using CSRTs to determine whether aliens detained at Guantanamo were "properly detained as enemy combatants" was well known to the Congress when it enacted the MCA. Viewed against this historical backdrop, we are convinced that "determined by the United States to have been properly detained as an enemy combatant" refers to a determination by the executive-branch tribunal the Congress knew was making that determination. *Cf.* 10 U.S.C. § 948a(1)(A)(ii) (2006) (provision of MCA defining "unlawful enemy combatant" as a person "determined to be an unlawful enemy combatant by a [CSRT]"); *id.* § 948d(c)

statute, 28 U.S.C. § 2241, to challenge their detention, *Rasul*, 542 U.S. at 483. Both were decided on the same day.

(2006) ("A finding . . . by a [CSRT] . . . that a person is an unlawful enemy combatant is dispositive for purposes of jurisdiction for trial by military commission . . . ."). Accordingly, we hold that a CSRT determination is a "determin[ation] by the United States" under section 2241(e)(2) and reserve the question of what else those words might mean for another day.

## C. Constitutional Challenge

Having determined that the statute applies to the Appellant, we must now decide whether its application is constitutional.[9] We conclude that it is. He first argues that

---

[9] Concomitantly with his constitutional arguments, the Appellant contends that we should interpret section 7(a) as inapplicable to his claims in order to avoid what he believes are "serious issues of [the statute's] constitutionality." Janko Br. 31. "When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932) (Hughes, C.J.); *see also United States v. Coombs*, 37 U.S. (12 Pet.) 72, 76 (1838) (Story, J.). This principle applies if a statute (1) raises "grave and doubtful constitutional questions," *Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (quotation marks omitted), and (2) is "readily susceptible" of two constructions, one constitutional and the other unconstitutional, *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884 (1997) (quotation marks omitted). Assuming *arguendo* that section 2241(e)(2) satisfies the first requirement, it does not satisfy the second. "[T]he statute must be genuinely susceptible to two constructions after, and not before, its complexities are unraveled." *Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998); *see also Clark v. Martinez*, 543 U.S. 371, 385 (2005). As we have shown *supra*, section 2241(e)(2) unambiguously applies to the Appellant's claims. Because only one construction of section 2241(e)(2) is "fairly possible," *United*

section 2241(e)(2) is unconstitutional because it deprives him of a damages remedy for violations of his constitutional rights. Apparently recognizing that we rejected this argument in *Al-Zahrani*, 669 F.3d at 319–20, the Appellant once again relies on his successful habeas petition to distinguish his case. While his successful habeas petition is a factual distinction, it makes no constitutional difference. Jurisdiction, in this context, is the authority of a court to decide a particular class of cases. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010) ("[T]he term 'jurisdictional' properly applies only to 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating [the court's] authority." (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004))). The class of claims to which section 2241(e)(2) constitutionally applies plainly encompasses the Appellant's claims—that is, *any* detention-related claims, whether statutory or constitutional, brought by an alien detained by the United States and determined to have been properly detained as an enemy combatant. *Al-Zahrani*, 669 F.3d at 318–19. The writ, although perhaps relevant to the merits of his constitutional claims, does not move them out of the class to which section 2241(e)(2) constitutionally applies.

Finally, citing to *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871), the Appellant argues that section 2241(e)(2) unconstitutionally encroaches on the judiciary's Article III authority by mandating a particular result in his case. The Supreme Court in *Klein* struck down a statute because, *inter alia*, it purported to "prescribe rules of decision

---

*States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) (Holmes, J.), the constitutional questions raised by section 2241(e)(2) "must be faced and answered," *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379 (1933) (Cardozo, J.).

to the Judicial Department . . . in cases pending before it" and therefore "passed the limit which separates the legislative from the judicial power." *Klein*, 80 U.S. (13 Wall.) at 146, 147. Although *Klein* is a bit of a constitutional Sphinx, we need not play Oedipus today. *Klein* applies where the Congress prescribes the outcome of *pending* litigation, *id.* at 146; *see also United States v. Sioux Nation of Indians*, 448 U.S. 371, 404 (1980), by means other than amending the applicable law, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) (quoting *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 441 (1992)). Enacted as an amendment to 28 U.S.C. § 2241(e)(2) more than four years before the Appellant filed his suit, section 7(a) of the MCA does not fit the bill.[10]

It may very well be that to deny the Appellant recovery for injuries incurred while in the United States's custody based solely on the unreviewed decision of a tribunal the Supreme Court has labeled "closed and accusatorial" is rough justice. *Boumediene*, 553 U.S. at 785 (quotation marks omitted). But that objection is to the statute's underlying policy and not to our interpretation thereof. The Constitution, subject to certain limitations, leaves exclusively to the Congress questions of fairness, justice, and the soundness of policy in the allocation of our jurisdiction. "[T]his court simply is not at liberty to displace, or to improve upon, the jurisdictional choices of Congress." *Wagner v. FEC*, 717 F.3d 1007, 1016 (D.C. Cir. 2013) (per curiam) (quotation marks

---

[10] We decline to decide how *Klein* might apply to litigation pending at the time of the MCA's enactment because the facts of this case do not require it. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

omitted). The Congress has communicated its directive in unmistakable language and we must obey.

For the foregoing reasons, the judgment of the district court is

*Affirmed*.