# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 5, 2016               Decided August 12, 2016

No. 15-5250

MOHAMMED JAWAD, ALSO KNOWN AS SAKI BACHA,
APPELLANT

v.

ROBERT M. GATES, FORMER SECRETARY OF DEFENSE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00811)

———

*Eric S. Montalvo* argued the cause and filed the briefs for appellant.

*Steven D. Schwinn* was on the brief for *amicus curiae* The John Marshall Law School International Human Rights Clinic in support of plaintiff-appellant.

*Lewis Yelin*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Matthew M. Collette*, Attorney.

Before: GRIFFITH, SRINIVASAN, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The United States detained Mohammed Jawad at Guantanamo Bay Naval Base for more than six years until he was released and returned to his native Afghanistan in 2009. He has filed a damages action against the United States and various federal officials, alleging that they subjected him to torture while he was in their custody. We affirm the district court's dismissal of Jawad's complaint because the federal courts lack jurisdiction to hear his claims.

I

Because we are reviewing the dismissal of Jawad's complaint, we take his allegations as true and recite the facts in the light most favorable to him. *See Klay v. Panetta*, 758 F.3d 369, 371 (D.C. Cir. 2014).

In December 2002, when Jawad was about 15 years old, Afghan authorities captured him following a grenade attack that badly injured two U.S. soldiers and their Afghan interpreter. The Afghan officials subjected Jawad to cruel and abusive treatment and forced him to sign a prepared confession. They gave the coerced confession to American military authorities in Afghanistan, who detained Jawad. While in their custody, Jawad was abused by American military authorities. Under intense and prolonged questioning, Jawad initially denied responsibility for the grenade attack, but later he confessed. Later still, he recanted his confession.

In February 2003, Jawad was transferred to Guantanamo Bay Naval Base, where the cruel treatment continued. Despite his age, he was not housed in a facility for juveniles. He spent the majority of his first year at Guantanamo "in social,

physical, and linguistic isolation," and even attempted suicide. For two weeks in May 2004, Jawad was "repeatedly mov[ed] . . . from one cell to another in quick intervals throughout the night to disrupt sleep cycles, on average every three hours." J.A. 30-31. Over the course of his detention at Guantanamo, he was interrogated more than 60 times, even after the government decided he had no useful intelligence. These interrogations included "various forms of cruel treatment such as excessive cold, loud noise, beatings, pepper-spray, and being shackled for prolonged periods." J.A. 29.

Pursuant to the Authorization for Use of Military Force (AUMF), Pub. L. No. 107-40, 115 Stat. 224 (2001), the President may "detain enemy combatants 'for the duration of the particular conflict in which they were captured.'" *Al Janko v. Gates*, 741 F.3d 136, 138 (D.C. Cir. 2014) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion)). To determine whether an individual is properly detained as an enemy combatant, wholly apart from whether that person can be punished for his alleged crimes by a military commission, each detainee appears before a Combatant Status Review Tribunal (CSRT). *See id.* In 2004, a CSRT determined that Jawad was properly detained as an enemy combatant. In 2005 and again in 2006, Administrative Review Boards (ARBs) concluded that there was sufficient reason to continue his detention. In rendering its decision, each tribunal "relied heavily" on Jawad's "alleged confessions." J.A. 33.

In 2007, the United States charged Jawad under the Military Commissions Act (MCA) of 2006 with three counts of attempted murder in violation of the law of war and three counts of intentionally causing serious bodily injury. The latter three counts were eventually dismissed as lesser included offenses. In September 2008, after prosecutors

expressed their intent to use Jawad's confessions, his counsel moved to suppress them as the product of torture. In November 2008, the military commission judge agreed and suppressed the confessions. The judge also found that the repeated movement of Jawad at night throughout May 2004 was "abusive conduct and cruel and inhuman treatment." J.A. 36.

While a prisoner at Guantanamo, Jawad challenged his continued detention in 2005 with a petition for a writ of habeas corpus in district court. He amended his habeas petition in 2009 and asked the district court to do what the military commission judge had done: suppress his previous confessions on the ground that they were the result of coercion and torture. The United States did not oppose the motion, and the district court granted it as conceded. In July 2009, the United States filed a notice in the district court, explaining that "[i]n light of the evidence that remains in the record following respondents' decision not to contest petitioner's [m]otion [to suppress], respondents will no longer treat petitioner as detainable under the [AUMF]." Notice of the United States, *Al Halmandy v. Obama*, No. 05-cv-2385, D.E. 311 (D.D.C. July 24, 2009), J.A. 81. The district court granted Jawad's habeas petition on July 30, 2009, and the United States repatriated Jawad to Afghanistan.

In 2014, Jawad filed a complaint in district court seeking damages from the United States and various federal officials arising out of his alleged mistreatment while in detention. His complaint sets forth six causes of action. The first four invoke the Federal Tort Claims Act and the Alien Tort Claims Act, alleging that Jawad was subjected to torture and inhumane treatment at the hands of his American captors in violation of the law of nations, the Third and Fourth Geneva Conventions, Articles 6 and 7 of the Optional Protocol to the Convention on

the Rights of the Child on the Involvement of Children in Armed Conflict, and the Torture Victim Protection Act. The last two claims assert Fifth and Eighth Amendment violations actionable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The district court dismissed Jawad's complaint, holding that section 7(a) of the 2006 MCA bars the court from hearing any claims arising out of Jawad's detention. Jawad timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

II

We review de novo the district court's decision that it lacked jurisdiction. *See Al Janko*, 741 F.3d at 139.

The relevant portion of section 7(a) of the 2006 MCA states:

> [N]o court, justice, or judge shall have jurisdiction to hear or consider any [non-habeas] action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

28 U.S.C. § 2241(e)(2). By its clear terms, this provision strips federal courts of jurisdiction to hear most claims against the United States arising out of the detention of aliens like Jawad captured during the United States' invasion of Afghanistan in response to the attacks of September 11, 2001. Jawad acknowledges that he is an "alien" and that his lawsuit is an "action against the United States or its agents relating

to . . . [his] detention, . . . treatment, . . . or conditions of confinement." *Id.* But he asserts that his lawsuit escapes the statute's jurisdictional bar because he has not "been determined by the United States to have been properly detained as an enemy combatant." *Id.*

Jawad concedes that a CSRT found that he was an "enemy combatant." J.A. 33. We have held that such a finding by a CSRT fully satisfies the section 7(a) requirement that an alien be determined by the United States to have been properly detained as an enemy combatant. *Al Janko*, 741 F.3d at 144-45 (citing *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317, 319 (D.C. Cir. 2012) and 28 U.S.C. § 2241(e)(2)). But Jawad offers several reasons why the CSRT finding does not do so here. Each of them fails.

Jawad first points to the government notice, filed in the habeas action, that it would "no longer treat" Jawad as "detainable." This statement, Jawad contends, was a "determination [that] he was *not* properly detained." Appellant's Br. 9 (emphasis added). According to Jawad, with this language, the government announced that it had rescinded the previous CSRT and ARB determinations. As a result, he argues, section 7(a)'s bar does not extend to him.

We assume that Jawad is right, as a matter of law, that the government could override a prior determination that an alien had been "properly detained" by issuing a new determination to the contrary in habeas litigation. But, as a matter of fact, the government did not do so here. It never said that Jawad was *not* properly detained, only that the United States would no longer *treat* him as such. Notice of the United States, *Al Halmandy v. Obama*, No. 05-cv-2385 (D.D.C. July 24, 2009), J.A. 81-82 (describing its position as "a decision not to contest the writ"). The government's statement says

nothing about the jurisdictional question raised by section 7(a): whether the United States had determined that Jawad was properly detained as an enemy combatant. *See Al Janko*, 741 F.3d at 144. That determination had already been made in Jawad's CSRT and ARB proceedings, and nothing in the government's habeas filing contradicted those earlier conclusions. This case would be much different and a closer call had the government conceded before the district court that Jawad had never been properly detained. But that is not the case here.

Jawad also argues that the initial CSRT determination that he was properly detained was "illegal and void" because "his capture, torture, and detention[] violated domestic and international law concerning treatment of juveniles accused of a crime." Appellant's Br. 20-21; *see id.* at 15-20 (citing the Optional Protocol to the Convention on the Rights of the Child on the Involvement of Children in Armed Conflict, S. TREATY DOC. NO. 106-37A (ratified June 18, 2002); Uniform Code of Military Justice, 10 U.S.C. § 948b(c) (2006); and Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.*). The United States asserts that Jawad forfeited or waived this argument by failing to raise it before the district court. But the United States takes too narrow a view of Jawad's position before the district court. There, he argued that section 7(a) did not divest the court of jurisdiction because his juvenile status "taint[ed]" the CSRT determination and the United States "should never have taken custody of [Jawad]" due to his juvenile status. Mem. Opposing Mot. to Dismiss at 25-26, *Jawad v. Gates*, No. 14-cv-00811 (D.D.C. Apr. 20, 2015). This was adequate to preserve the argument on appeal.

On the merits, we conclude that even if we were to decide that an allegation that a CSRT was "illegal and void" bears on whether section 7(a)'s jurisdictional bar applies—a

conclusion we need not, and do not, reach—Jawad's argument fails for other reasons. Jawad has not shown that his CSRT determination ran afoul of any domestic or international law. He does not cite any provision in the Uniform Code of Military Justice or other domestic law that prohibits the detention of juvenile enemy combatants pursuant to the AUMF, much less explain how violations of any such provisions would "void" the CSRT's determination. Nor does Jawad show how any alleged failure of the United States to comply with its treaty obligations would do so. In particular, Jawad relies on the Optional Protocol to the Convention on the Rights of the Child on the Involvement of Children in Armed Conflict, which the United States ratified in 2002. That treaty requires signatories to "take all feasible measures to ensure" that child soldiers "recruited or used in hostilities contrary to this Protocol are demobilized or otherwise released from service" and to provide, "when necessary, . . . all appropriate assistance for their physical and psychological recovery and their social reintegration." Optional Protocol, art. 6(3). Jawad argues that the United States violated the Protocol's requirement to provide rehabilitation and reintegration to detained juveniles. But Jawad never explains how these provisions would render his initial detention improper under the treaty, let alone why a violation of the treaty would "void" the CSRT's determination.

Jawad argues as well that his juvenile status makes the jurisdictional bar of section 7(a) wholly inapplicable to his case because the "MCA lacks jurisdiction over minors." Appellant's Br. 16. Although it is not altogether clear what Jawad means by this, we understand him to be arguing that no provision of the MCA can apply to juveniles, leaving him free to bring his damages action. According to Jawad, it is "well-established that military tribunals lack jurisdiction over minors below the age of consent." *Id.* at 17 (citing *United*

*States v. Blanton*, 23 C.M.R. 128 (C.M.A. 1957) (holding that the "enlistment of a person under the statutory age is void so as to preclude trial by court-martial for an offense committed by him while still under such age")). Similarly, Jawad points to the Federal Juvenile Delinquency Act, which provides certain procedures for the prosecution and detention of juveniles in federal cases, and contends that the MCA lacks those protections. *See* 18 U.S.C. § 5031 *et seq.* But Jawad again sidesteps the relevant question. Nothing in those sources of law bears on whether Congress, through section 7(a), barred courts from hearing damages actions brought by juveniles determined to be properly detained as enemy combatants. The court-martial cases deal with whether military courts have jurisdiction to try juveniles. That has no relevance here because Jawad is not being tried by any military court. The Federal Juvenile Delinquency Act is equally immaterial. Even if its procedures for detaining and prosecuting juveniles were somehow applicable to detainees like Jawad, any argument based on such procedures relates only to Jawad's merits claim about his treatment in detention. The Act is silent as to the question at issue here: whether juveniles detained under the AUMF are barred from filing damages actions in federal court.

Jawad next argues that section 7(a) is inapplicable here because the United States never determined that he was an *unlawful* enemy combatant. Although Jawad agrees that his CSRT and ARB determinations found him to be an enemy combatant, he maintains that section 7(a) should apply only to detainees who are determined to be *unlawful* enemy combatants because the 2006 MCA provides that military commissions have jurisdiction only over such combatants. 10 U.S.C. § 948d(a) (2006). According to Jawad, section 7(a) "may only bar claims by individuals over which the MCA has

jurisdiction," which is limited to *unlawful* enemy combatants. Appellant's Br. 25.

But the plain language of section 7(a) does not require a finding of *unlawfulness*. Rather, the jurisdictional bar applies where a detainee has been determined to be an "enemy combatant." 28 U.S.C. § 2241(e)(2). We will not "read[] a phrase into the statute when Congress has left it out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). Where, as here, the statutory text is clear, "[t]he plain meaning of legislation should be conclusive" unless it "compels an odd result." *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996) (internal quotation marks omitted).

Nothing odd results from applying section 7(a)'s jurisdictional bar to suits by detainees who have been determined to be enemy combatants, but not only *unlawful* enemy combatants. To be sure, Congress conditioned the jurisdiction of military commissions on unlawful-enemy-combatant status in the 2006 MCA, 10 U.S.C. § 948d(a). Section 7(a), however, is not linked to the MCA's grant of jurisdiction to military commissions. The bar is instead tied to the AUMF's detention authority, which allows "the President to detain enemy combatants"—not solely unlawful ones. *Ali v. Obama*, 736 F.3d 542, 544 (D.C. Cir. 2013). We affirmed this understanding in *Al Janko*, explaining that section 7(a) applies where the United States has made a determination "that the detainee meets the *AUMF*'s criteria for enemy-combatant status." 741 F.3d at 144 (emphasis added). Because section 7(a) deals with the jurisdiction of federal courts over lawsuits by individuals determined to have been properly detained, section 7(a) understandably applies to enemy combatants—the category of combatants who may be properly detained under the AUMF—and is not limited to unlawful enemy combatants. In fact, Congress's use of

"unlawful" in the sections of the 2006 MCA that deal with military-commission jurisdiction, but not in section 7(a), further works against reading that term into the jurisdictional bar. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Finally, Jawad raises several meritless constitutional claims. First, he contends that he is entitled to a damages remedy for "unconstitutional trespasses by the United States." Appellant's Br. 33. Our precedent, however, forecloses this position. We have held that monetary remedies are not constitutionally required "even in cases such as the present one, where damages are the sole remedy by which the rights of plaintiffs . . . might be vindicated." *Al-Zahrani*, 669 F.3d at 320. Second, Jawad maintains that section 7(a) is unconstitutional on its face because its "broad elimination of jurisdiction" is "inconsistent with the plain language of Article III of the Constitution." Appellant's Br. 29-30. To succeed on a facial challenge, Jawad must show "that no set of circumstances exists under which [section 7(a)] would be valid, or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal citations and quotation marks omitted). But our precedent again forecloses Jawad's argument. As we have held, section 7(a) can constitutionally be applied to "*any* [non-habeas] detention-related claims, whether statutory or constitutional, brought by an alien detained by the United States and determined to have been properly detained as an enemy combatant." *Al Janko*, 741 F.3d at 146.

Jawad also urges that section 7(a) is a legislative act inflicting punishment without trial in violation of the Bill of

Attainder Clause, U.S. CONST. art. I, § 9, cl. 3. *See United States v. Lovett*, 328 U.S. 303, 315 (1946). A law is an unconstitutional bill of attainder if it "applies with specificity" to a person or class and "imposes punishment." *BellSouth Corp. v. FCC*, 162 F.3d 678, 683 (D.C. Cir. 1998); Anthony Dick, Note, *The Substance of Punishment Under the Bill of Attainder Clause*, 63 STAN. L. REV. 1177 (2011). Even assuming that section 7(a) meets the specificity requirement because it applies only to enemy combatants, Jawad advances no argument that the jurisdictional bar is a form of punishment. We will "not consider 'asserted but unanalyzed' arguments." *Anna Jaques Hosp. v. Sebelius*, 583 F.3d 1, 7 (D.C. Cir. 2009) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." (quoting *Carducci*, 714 F.2d at 177)). And even if we did consider Jawad's argument, "only the clearest proof could suffice to establish the unconstitutionality of a statute" on Bill of Attainder Clause grounds, *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 83 (1961), and his failure to provide such proof dooms his claim. *See also Hamad v. Gates*, 732 F.3d 990, 1004 (9th Cir. 2013) (concluding that section 7(a) does not qualify as a bill of attainder); *Ameur v. Gates*, 759 F.3d 317, 329 (4th Cir. 2014) (same).

III

We affirm the district court's dismissal of Jawad's complaint for lack of subject matter jurisdiction.